## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **MEMORIAL HERMANN HEALTH SYSTEM,** §<br>§<br>§<br>§<br>*Plaintiff,* §<br>§<br>**v.** §<br>§<br>**BLUE CROSS BLUE SHIELD OF TEXAS,** §<br>§<br>*Defendant.* §<br>§ | **CIVIL ACTION NO. 17-CV-2661**<br><br>**HON. SIM LAKE** |

## DEFENDANT HEALTH CARE SERVICE CORPORATION'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(3) FOR IMPROPER VENUE AND MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS.................................................... 1

STATEMENT OF ISSUES ................................................................................... 2

FACTUAL BACKGROUND ................................................................................ 4

SUMMARY OF ARGUMENT ............................................................................ 6

ARGUMENT .......................................................................................................... 7

    I.    THE PARTIES AGREED TO ARBITRATE THIS DISPUTE ......................................... 7

        A.    There is a Valid Arbitration Agreement in Place ................................. 8

        B.    The Arbitration Agreement Delegates the Scope of Arbitrability to the Arbitrator...................................... 8

        C.    Regardless, the Dispute Falls Within the Scope of the Arbitration Agreement ......................................... 11

    II.    ARBITRATION IS NOT FORECLOSED BY OTHER LEGAL CONSTRAINTS ............. 14

    III.    THIS CASE SHOULD BE DISMISSED UNDER RULE 12(B)(3) ............................... 15

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&A Glob. Indus., Inc. v. Wolfe*,
  No. CIV.A.3:01CV1515-D, 2001 WL 1343628 (N.D. Tex. Oct. 29, 2001) ..........................13

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
  358 F.3d 337 (5th Cir. 2004) ....................................................................................................2

*Alford v. Dean Witter Reynolds, Inc.*,
  975 F.2d 1161 (5th Cir. 1992) ............................................................................................7, 12

*Ambraco, Inc. v. Bossclip B.V.*,
  570 F.3d 233 (5th Cir. 2009) ....................................................................................................5

*ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*,
  188 F.3d 307 (5th Cir. 1999) ................................................................................................3, 7

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643, 106 S. Ct. 1415 (1986).....................................................................................12

*Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*,
  955 F. Supp. 2d 678 (N.D. Tex. 2013) ......................................................................................2

*Cantella & Co. Inc. v. Goodwin*,
  924 S.W.2d 943 (Tex. 1996)...................................................................................................3, 6

*Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*,
  950 S.W.2d 375 (Tex. App.—Tyler 1996), *writ dismissed w.o.j.*, 988 S.W.2d
  731 (Tex. 1998)......................................................................................................................3, 7

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
  748 F.3d 249 (5th Cir. 2014) ..............................................................................................9, 10

*Dickey's Barbecue Restaurants, Inc. v. Mathieu*,
  No. 3:12-CV-5119-G, 2013 WL 5268976 (N.D. Tex. Sept. 18, 2013) ...................................14

*Dustrol, Inc. v. Champagne-Webber, Inc.*,
  No. CIV.A.3:01-CV-0650-G, 2001 WL 1326477 (N.D. Tex. Oct. 16, 2001)...........................2

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938, 115 S.Ct. 1920 (1995).........................................................................................8

*Fleetwood Enterprises, Inc. v. Gaskamp*,
  280 F.3d 1069 (5th Cir. 2002)
  *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002) .................................8

*Folse v. Richard Wolf Med. Instruments Corp.*,
 56 F.3d 603 (5th Cir. 1995) ..........................................................................14

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
 141 F.3d 243 (5th Cir. 1998) ..................................................................2, 6, 13

*Fozard v. C.R. England, Inc.*,
 3:16-CV-1334-B, 2017 WL 1036661 (N.D. Tex. March 17, 2017) ....................14

*Freudensprung v. Offshore Tech. Servs., Inc.*,
 379 F.3d 327 (5th Cir. 2004) ......................................................................2, 10

*Garrett v. Circuit City Stores, Inc.*,
 449 F.3d 672 (5th Cir. 2006) ............................................................................6

*J.M. Davidson, Inc. v. Webster*,
 128 S.W.3d 223 (Tex. 2003)............................................................................11

*Jack B. Anglin Co. v. Tipps*,
 842 S.W.2d 266 (Tex. 1992)............................................................................14

*Kubala v. Supreme Prod. Servs., Inc.*,
 830 F.3d 199 (5th Cir. 2016) .................................................................. *passim*

*Lim v. Offshore Specialty Fabricators, Inc.*,
 404 F.3d 898 (5th Cir. 2005) ....................................................................4, 7, 15

*Mitsui & Co. (USA), Inc. v. MIRA M/V*,
 111 F.3d 33 (5th Cir. 1997) ............................................................................15

*Monday v. Cox*,
 881 S.W.2d 381 (Tex. App.—San Antonio 1994, writ denied)..............................6

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,
 460 U.S. 1, 103 S. Ct. 927 (1983)....................................................................11

*In re Olshan Found. Repair Co., LLC*,
 328 S.W.3d 883 (Tex. 2010)..............................................................................2

*Omni Pinnacle, LLC v. ECC Operating Servs., Inc.*,
 255 F. App'x 24 (5th Cir. 2007) ......................................................................15

*Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.*,
 343 F.3d 355 (5th Cir. 2003) ............................................................................2

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
 139 F.3d 1061 (5th Cir. 1998) ........................................................................12

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ..........................................................................3, 8, 9

*Prudential Sec. Inc. v. Marshall*,
    909 S.W.2d 896 (Tex. 1995)...............................................................................13

*Reliable Energy Sols. v. Amalfi Apartment Corp.*,
    No. 4:16-CV-03346, 2017 WL 3412198 (S.D. Tex. June 30, 2017)
    *report and recommendation adopted,* No. CV H-16-3346, 2017 WL 3394613
    (S.D. Tex. Aug. 7, 2017)...............................................................................12, 13

*Rent–A–Ctr., W., Inc. v. Jackson*,
    561 U.S. 63, 130 S. Ct. 2772 (2010) ....................................................................9

*Rouf v. Cricket Commc'ns, Inc.*,
    No. CIV.A. H-13-2778, 2013 WL 6079255 (S.D. Tex. Nov. 19, 2013) ................12

*Schlumberger Tech. Corp. v. Baker Hughes Inc.*,
    355 S.W.3d 791 (Tex. App.—Houston [1st] 2011, no pet.) ............................3, 8, 9

*Vujasinovic & Beckcom, PLLC v. Cubillos*,
    No. CV H-15-2546, 2016 WL 5573712 (S.D. Tex. Sept. 29, 2016) ............2, 10, 11

*Webb v. Investacorp Inc.*,
    89 F.3d 252 (5th Cir. 1996) .............................................................................3, 6

*Woodmen of World Life Ins. Soc'y/Omaha Woodmen Life Ins. Soc'y v. JRY*,
    320 F. App'x 216 (5th Cir. 2009) ........................................................................6

**Statutes**

9 U.S.C. §§ 3, 4..............................................................................................2, 15

Tex. Civ. Prac. & Rem. Code §§ 171.021(a), 171.025............................................3, 15

**Rules**

Fed. R. Civ. P. 12(b)(3)....................................................................................4, 15

## INTRODUCTION

This is a contract dispute between a health insurance company and a hospital regarding the amount of payment due the hospital with respect to certain claims for reimbursement for post-emergency care services. Plaintiff Memorial Hermann Health System's ("Memorial Hermann") suit is premised on the allegation that Defendant Health Care Service Corporation, a Mutual Legal Reserve Company that operates in Texas as Blue Cross and Blue Shield of Texas ("BCBSTX")[1], failed to pay hundreds of claims pursuant to the alleged contractual terms. But the contract underlying Memorial Hermann's complaint contains a mandatory arbitration agreement requiring that "any Contract interpretation or claim issue" be resolved "by arbitration under the commercial rules and regulations of the American Arbitration Association." BCBSTX moves to enforce that agreement to arbitrate and respectfully submits this memorandum of law in support of its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.

## NATURE AND STAGE OF PROCEEDINGS

Memorial Hermann sued BCBSTX on August 1, 2017 in the District Court of Harris County, Texas, alleging that BCBSTX breached its contract with Memorial Hermann by failing to pay hundreds of claims submitted by Memorial Hermann for post-emergency care services. On September 3, 2017, BCBSTX removed the case to this Court based on diversity jurisdiction. (*See* Dkt. No. 3.)

---

[1]  Memorial Hermann named Blue Cross Blue Shield of Texas as the defendant in the State Court Action. But Blue Cross Blue Shield of Texas is not a corporate entity; it is an unincorporated division of Health Care Service Corporation. (*See* Dkt. No. 3 Notice of Removal.)

# STATEMENT OF ISSUES

**Issue:** Should the Court compel arbitration pursuant to the Federal Arbitration Act ("FAA") and Texas General Arbitration Act ("TGAA"), and dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) based on improper venue because the express terms of the underlying contract require any contract interpretation or claim issue to be resolved through arbitration?

**Standard of Review:** Under the FAA, when a party fails, neglects, or refuses to arbitrate under a written agreement for arbitration, the aggrieved counter-party may move the court for an order directing that an arbitration proceed pursuant to the relevant agreement. 9 U.S.C. § 4. Similarly, under the TGAA, [2] a court must order the parties to arbitrate upon a showing that there

---

[2]    In the alternative, BCBSTX brings its motion pursuant to the TGAA. The FAA applies to contracts involving commerce "absent clear and unambiguous contractual language to the contrary." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340–43 (5th Cir. 2004). The arbitration provision at issue here expressly invokes the TGAA and a separate provision of the contract provides that the contract will be governed by the laws of the state of Texas. Given the language of the arbitration provision, there is conflicting case law regarding whether the FAA, the TGAA, or both governs in this case. *Compare Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 249–50 (5th Cir. 1998) (holding that the parties intended Texas law and the TGAA to govern the scope of the arbitration clause, to the exclusion of the FAA, where the arbitration clause (1) invoked the TGAA, (2) provided that the arbitration would be conducted in Harris County, Texas, (3) provided that disagreements over arbitrators were to be resolved by "any judge of any Court of the State of Texas, having jurisdiction and located in Harris County," and (4) announced in bold, capital type on the first page of the contract: "This agreement is subject to arbitration under the Texas General Arbitration Act") *with Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.*, 343 F.3d 355, 360–62 (5th Cir. 2003) (parties "must expressly exclude the applicability of the FAA if they want only state law to apply"); *see also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004) ("Where, as here, an agreement contains a clause designating Texas law but does not exclude the FAA, the FAA and Texas law, including that state's arbitration law, apply concurrently because Texas law incorporates the FAA as part of the substantive law of that state."); *Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*, 955 F. Supp. 2d 678, 692–93 (N.D. Tex. 2013) ("When an agreement contains a clause that designates Texas law but does not exclude the FAA, the FAA and Texas law, including the TAA, apply concurrently.") (citing *Freudensprung*, 379 F.3d at 338 n.7). The Texas Supreme Court in 2010 held that a clause requiring that disputes arising out of the contract "be resolved by mandatory and binding arbitration ... pursuant to the Texas General Arbitration Act...." was sufficient to indicate the parties' intent to choose "a state's substantive law, specifically the TAA, to govern disputes under the agreement," to the exclusion of the FAA. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 890 (Tex. 2010). But in *Vujasinovic & Beckcom, PLLC v. Cubillos*, No. CV H-15-2546, 2016 WL 5573712 (S.D. Tex. Sept. 29, 2016), where the contract contained a Texas choice of law provision and an arbitration clause requiring disputes to be resolved "pursuant to the Texas General Arbitration Statute," *id.* *2, the court held that the contract did not "exclude the applicability of the Federal Arbitration Act," and that "the Federal Arbitration Act and the Texas Arbitration Act both apply." *Id.* at *4. Regardless, as discussed throughout this memorandum, the analysis under the FAA and TGAA is substantially the same, and the result in this case is exactly the same. *See e.g., Dustrol, Inc. v. Champagne-Webber, Inc.*, No. CIV.A.3:01-CV-0650-G, 2001 WL

is an agreement to arbitrate and the opposing party has refused to do so. Tex. Civ. Prac. & Rem. Code § 171.021(a).

A court engages in a two-step analysis in determining whether to compel arbitration under the FAA: (1) whether the parties agreed to arbitrate the dispute in question; and (2) whether "legal constraints would foreclose the arbitration of those claims." *Webb v. Investacorp Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Whether the parties agreed to arbitrate the dispute involves two separate determinations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.*; *see also ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 311 (5th Cir. 1999) (applying the TGAA and Texas law) (citing *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 377 (Tex. App.—Tyler 1996), *writ dismissed w.o.j.*, 988 S.W.2d 731 (Tex. 1998)).

However, an arbitration agreement may delegate determination of the scope of arbitrability to the arbitrator, including by incorporating the American Arbitration Association (the "AAA") commercial arbitration rules into the arbitration agreement. *See, e.g.*, *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802 (Tex. App.—Houston [1st] 2011, no pet.); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). In such cases, the court's analysis is limited.

> It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it

---

1326477, at *3–*4 (N.D. Tex. Oct. 16, 2001) (noting that the party opposing arbitration conceded "that the choice-of-law issue is of no consequence because both the [FAA] and the TGAA require that there be an agreement to arbitrate, and that the dispute be within the scope of that agreement, before arbitration will be compelled" (internal quotation marks omitted); also noting, after choosing to apply the TGAA, that "the analysis would be substantially similar were the FAA to be applied"). Under Texas law, Memorial Hermann bears the burden of defeating the arbitration agreement. *Cantella & Co. Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) ("A party opposing an arbitration agreement bears the burden of defeating it.").

> evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (internal citations omitted).

The Fifth Circuit has recognized that when the claims alleged in a complaint are subject to arbitration, dismissal of the civil litigation under Rule 12(b)(3) is the proper remedy. *See, e.g.*, *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005); *see also* Fed. R. Civ. P. 12(b)(3).

## FACTUAL BACKGROUND

Memorial Hermann is a large, sophisticated healthcare system in Texas that provides a variety of health care services, including emergency services. (Dkt. No. 3-1 State Court Pet. ¶¶ 6, 16.) BCBSTX offers insurance and administers health benefit plans that enable its members to receive access to health care services. (*Id.* ¶ 6.) In connection with those efforts to provide access, BCBSTX contracts with healthcare providers, including hospitals and healthcare systems like Memorial Hermann.

Memorial Hermann alleges that the parties entered into various contracts to govern their relationship, including how BCBSTX would reimburse Memorial Hermann for services provided to members of various BCBSTX health benefit plans. (*Id.* ¶¶ 8-11.) Through these contracts, Memorial Hermann became an "in-network" provider for certain BCBSTX plans, including certain Health Maintenance Organization ("HMO") and Preferred Provider Organization ("PPO") plans. (*See id.* ¶¶ 8-9.)

Memorial Hermann and BCBSTX also entered into a broad-ranging Hospital Contract for Traditional Indemnity Business (the "Traditional Contract"). (Ex. 1 Traditional Contract; *see*

*also* Dkt. No 3-1 State Court Pet. ¶ 11-12.)[3] The Traditional Contract provides the "reimbursement mechanism which will be used as the basis for payment of Covered Services by BCBSTX to [Memorial Hermann]." (Ex. 1 Traditional Contract Art. 2.A.) The reimbursement rate under the Traditional Contract is known as the PAR rate. (*See* Dkt. No. 3-1 State Court Pet. ¶ 11). The Traditional Contract defines "Covered Services" as "those acute care inpatient and outpatient hospital services for which benefits are available under a Subscriber's health care benefit plan." (*Id.* Art. 1.A.) "Subscriber," in turn, "means any person entitled to receive Covered Services under a health care benefit plan provided or administered by [BCBSTX]." (*Id.* Art. 1.B.)

In 2013, BCBSTX introduced the Blue Advantage HMO plan (the "BAV Plan"). (Dkt. No. 3-1 State Court Pet. ¶ 14.) Memorial Hermann was "out-of-network" for the BAV Plan. (*Id.* ¶ 15.) Because Memorial Herman was not an "in-network" provider for the BAV Plan (*id.* ¶ 15), BCBSTX took the position that the Traditional Contract applied for reimbursement of services provided by Memorial Hermann to BAV Plan members. (*See id.* ¶ 20.) Memorial Hermann eventually agreed. (*Id.*)

Now, Memorial Hermann alleges that BCBSTX breached its contractual obligations with regard to payment of claims submitted for post-emergency care services to BAV Plan members and, as a result, owes the PAR reimbursement rate for hundreds of BAV Plan claims. (*Id.* ¶¶ 24, 30.)

---

[3] References to Ex. 1 are to Exhibit 1 of the Declaration of Brian P. Kavanaugh. Ex. 1 contains relevant excerpts of the Traditional Contract. While Memorial Hermann did not attach the Traditional Contract, or any other contract, to its petition, the Traditional Contract is expressly referenced in the petition (*e.g.* Dkt. No. 3-1 State Court Pet. ¶ 11) and is properly considered by the Court. Regardless, under Rule 12(b)(3), this Court is "permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

The operative Traditional Contract contains a forum selection provision requiring that any contract interpretation or claim issue shall be resolved by arbitration. The full text of the provision states:

> After exhausting the remedies contained in this Article 11, any Contract interpretation or claim issue which [Memorial Hermann] or BCBSTX determines has not been satisfactorily resolved shall be resolved by arbitration under the commercial rules and regulations of the American Arbitration Association, and in accordance with the Texas General Arbitration Act (Chapter 171 Texas Civil Practice and Remedies Codes). (Ex. 1 Traditional Contract Art. 11.C.)

Despite this, Memorial Hermann has made its intention clear that it does not seek to arbitrate, as evidenced by filing this lawsuit in state court.

## SUMMARY OF ARGUMENT

Federal and Texas policy strongly favor arbitration. *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 674 (5th Cir. 2006) ("[O]nce a party makes an agreement to arbitrate, that party is held to arbitration unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." (internal quotation marks omitted)); *see also Ford*, 141 F.3d at 250 ("Texas courts favor arbitration.") (*citing Monday v. Cox*, 881 S.W.2d 381, 384 (Tex. App.—San Antonio 1994, writ denied)); *Cantella*, 924 S.W.2d at 944 (noting Federal and Texas law strongly favor arbitration).

Because the parties agreed to arbitrate all contract interpretation and claim issues, as set forth in Article 11 of the Traditional Contract, and because no legal constraints impact the arbitrability of those claims, this Court must compel arbitration. *Webb*, 89 F.3d at 258; *see also Woodmen of World Life Ins. Soc'y/Omaha Woodmen Life Ins. Soc'y v. JRY*, 320 F. App'x 216, 221 (5th Cir. 2009). Specifically, it cannot be disputed that the parties entered into the arbitration agreement contained in the Traditional Contract. And, under that arbitration

agreement, any dispute regarding the scope of the arbitration agreement must be submitted to the arbitrator.

When all of the claims alleged in a complaint are subject to arbitration, dismissal of the litigation under Federal Rule of Civil Procedure 12(b)(3), as opposed to a stay of litigation, is the proper remedy. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Lim*, 404 F.3d at 902 (analyzing Fifth Circuit law, as well as other circuits, to find that it is proper to grant a Rule 12(b)(3) motion to dismiss in the event of a valid forum selection clause). Because Memorial Hermann's dispute with BCBSTX is subject to a valid arbitration agreement, the Court should dismiss this action.

## ARGUMENT

### I.    THE PARTIES AGREED TO ARBITRATE THIS DISPUTE

Whether the parties agreed to arbitrate a dispute involves two determinations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89 F.3d at 258; *see also Kubala*, 830 F.3d at 202 ("Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." (internal citations omitted; emphasis added)); *ASW Allstate Painting & Const. Co.*, 188 F.3d at 311 (applying TGAA and Texas law) (citing *Celebrity*, 950 S.W.2d at 377).

In this case, the Traditional Contract contains a valid agreement to arbitrate. (Ex. 1 Traditional Contract Art. 11.C.) And under the terms of that same agreement, the second threshold issue – the scope of the arbitration agreement – must be determined by the arbitrator, not the Court.

## A. There is a Valid Arbitration Agreement in Place

The satisfaction of this first threshold issue – contract formation – cannot be questioned because it is undisputed that "the parties entered into *any arbitration agreement at all*." *Kubala*, 830 F.3d at 202 (emphasis added). Because Memorial Hermann executed the Traditional Contract (Ex. 1 Traditional Contract Art. 23) and has been operating under it since 2005 (*id.;* Dkt. No. 3-1 State Court Pet. ¶¶ 11-12), whether there is any valid arbitration agreement must be answered affirmatively. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002), *opinion supplemented on denial of reh'g,* 303 F.3d 570 (5th Cir. 2002) (The determination of whether there is a valid agreement to arbitrate "is generally made on the basis of ordinary state-law principles that govern the formation of contracts." (internal citation and quotation marks omitted)). Indeed, Memorial Hermann concedes in the State Court Petition that the Traditional Contract is valid and enforceable, and seeks to be paid the rates set forth in this contract. (Dkt. No. 3-1 State Court Pet. ¶¶ 11-12, 20-21, 35.)

## B. The Arbitration Agreement Delegates the Scope of Arbitrability to the Arbitrator

Ordinarily, both contract formation *and* contract interpretation are threshold issues for the court to decide. *See e.g., Kubala*, 830 F.3d at 201–02; *Schlumberger Tech. Corp.*, 355 S.W.3d at 802 (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 1923 (1995)). But the parties' contract may bypass the court's involvement in this second threshold issue by delegating interpretation of the scope of arbitrability to the arbitrator. *Petrofac, Inc.*, 687 F.3d at 675 ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." (quoting *Kaplan*, 514 U.S. at 943)).

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202 (citing *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 2776 (2010)). Where the arbitration agreement expresses an intent to have questions of arbitrability determined by the arbitrator, "the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* (citations omitted).

Further, under Texas and Fifth Circuit law, "the express incorporation of rules that empower the arbitrator to determine arbitrability—such as the AAA Commercial Arbitration Rules—has been held to be clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues." *Schlumberger Tech. Corp.*, 355 S.W.3d at 802; *Petrofac, Inc.*, 687 F.3d at 675 (holding that incorporating AAA rules into an arbitration agreement "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"). This is because the "AAA Rules for commercial arbitration include Rule 7, which provides that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) (quoting AAA rules for commercial arbitration). The Fifth Circuit in *Crawford*, relying on *Petrofac*, affirmed the district court's order compelling arbitration, holding

that "whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court." *Id.* at 263.

As in *Schlumberger*, *Petrofac*, and *Crawford*, the arbitration agreement in this case expressly incorporates and requires application of the "commercial rules and regulations of the American Arbitration Association." (Ex. 1 Traditional Contract Article 11.C.) Accordingly, questions regarding the scope of the arbitration agreement must be determined by the arbitrator.

This is the required result under both the FAA and the TGAA. In *Vujasinovic & Beckcom*, 2016 WL 5573712, the relevant contract, like the Traditional Contract here, contained a Texas choice of law provision and an arbitration clause requiring disputes to be resolved "pursuant to the Texas General Arbitration Statute in accordance with the commercial arbitration rules then in effect with the American Arbitration Association." *Id.* at *2. The court first held that "[w]hen a contract contains a clause specifying Texas law (as here), but does not exclude the applicability of the Federal Arbitration Act, the Federal Arbitration Act and the Texas Arbitration Act both apply." *Id.* at *4 (citing *Freudensprung*, 379 F.3d at 338 n.7). Applying both statutes, the court found, based on *Petrofac* and *Schlumberger*, that both "Fifth Circuit and Texas cases unambiguously hold that incorporating AAA rules into an arbitration agreement makes threshold questions of arbitrability questions for the arbitrator to decide, rather than the court." *Id.* at *5. Layering in the Fifth Circuit's instruction in *Kubala*, the court concluded:

> The combination of *Petrofac* and *Kubala* makes this case simple. This court has already ruled that there is a valid and enforceable arbitration clause, and the parties do not meaningfully challenge that ruling. The arbitration clause incorporates the AAA rules by reference, which, under *Petrofac*, is the functional equivalent of a delegation clause. Under *Kubala*, once the court determines that there is a valid and enforceable arbitration agreement that contains a delegation clause, the court must grant the motion to compel arbitration. The arbitrator will hear and rule on the defendants'

various arguments as to what claims can properly be heard in arbitration and what claims must be left for the court to decide.

*Id.* at *6.

Fifth Circuit and Texas precedent under the FAA and TGAA require that any dispute about the scope of the Traditional Contract's arbitration clause be decided by the arbitrator. This Court, need not, and may not, wade into the scope of arbitrability. Instead, the dispute must be sent to arbitration and the litigation dismissed.

## C. Regardless, the Dispute Falls Within the Scope of the Arbitration Agreement

Even if the Court were to find that the Traditional Contract's express incorporation of the AAA rules does not prevent it from independently considering the scope of the arbitration agreement, Memorial Hermann's claims are well within the scope of the arbitration agreement facially and under the broad interpretation given to arbitration agreements under Texas and Fifth Circuit law. If a valid arbitration agreement exists, both Texas and federal law require courts to apply a "strong presumption favoring arbitration." *Vujasinovic & Beckcom*, 2016 WL 5573712, at *4 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

Memorial Hermann's allegations center on the interpretation of the Traditional Contract and its application to claims for reimbursement submitted by Memorial Hermann to BCBSTX for post-emergency services provided to BAV Plan members. (Dkt. No. 3-1 State Court Pet. ¶¶ 20, 35.) In other words, this is a contract interpretation dispute about claim issues. And the Traditional Contract's arbitration provision explicitly requires that "any Contract interpretation or claim issue" must be resolved by arbitration. (*See* Ex. 1 Traditional Contract Art. 11.C.) As such, the entire dispute falls within the arbitration provision and dismissal is proper. *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941 (1983) (Courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of

arbitration."); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal quotation marks omitted)); *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (same); *Rouf v. Cricket Commc'ns, Inc.*, No. CIV.A. H-13-2778, 2013 WL 6079255, at *6 (S.D. Tex. Nov. 19, 2013) (holding that the plaintiffs' claims for anticipatory breach of contract fell strictly within the purview of the arbitration clause, which stated that "all disputes" arising out of the contract shall be decided by arbitration).

Moreover, *all* Counts of the petition require interpretation and application of the Traditional Contract, and thus dismissal is warranted. *Alford*, 975 at 1164. Count One (breach of contract) directly relates to "claim issues" and the proper "Contract interpretation" of the Traditional Contract and its PAR Rate. Count Two (quantum meruit/unjust enrichment) is also a "claim issue" dispute regarding reimbursement for claims submitted by Memorial Hermann. (*See, e.g.*, Dkt. No. 3-1 State Court Pet. ¶ 45.) Further, Count Two is only plead in the alternative and expressly incorporates and relies on all of the factual allegations of the petition, including the Traditional Contract and PAR Rate. (Dkt. No. 3-1 State Court Pet. ¶ 38); *see Reliable Energy Sols. v. Amalfi Apartment Corp.*, No. 4:16-CV-03346, 2017 WL 3412198, at *3 (S.D. Tex. June 30, 2017), *report and recommendation adopted,* No. CV H-16-3346, 2017 WL 3394613 (S.D. Tex. Aug. 7, 2017) (holding that breach of contract, quantum meruit, and unjust enrichment claims were all within the scope of the arbitration agreement because all three claims "relate to the nature and quality of the goods and services that formed the basis for the

Agreement, and any representations made in connection therewith").[4]  Count Three, which seeks

declaratory relief, likewise relies on all of the factual allegations of the petition regarding the

Traditional Contract (Dkt. No. 3-1 State Court Pet. ¶ 46), and turns on the allegation that

BCBSTX's claim denials "violate[] the parties' agreement."  (*Id.* ¶ 48.); *see also Reliable Energy*

*Sols.*, 2017 WL 3394613, at *3 ("But, where there are any doubts or ambiguities as to scope of

the arbitration provision, they are ordinarily resolved in favor of arbitration.").

Under Texas law and the TGAA, the result is the same.[5]  First, under Texas law,

Memorial Hermann bears the burden of showing that the claims asserted *are not* within the scope

of the arbitration agreement.  *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995)

(placing the burden of showing the claims fell outside the scope of the arbitration agreement on

the party opposing arbitration).  Second, a court focuses on the factual allegations of the

complaint, rather than the legal causes of action asserted.  *Id.*  The test is whether the claim is "so

interwoven with the underlying contract that it could not stand alone, that is, whether the claim is

actionable without reference to the underlying contract."  *A&A Glob. Indus., Inc.*, 2001 WL

1343628, at *3 (applying Texas law).

Memorial Hermann's factual allegations, which are incorporated into and form the basis

of each of the petition's counts, implicate the Traditional Contract and, consequentially, its

arbitration provision.  Counts One and Two center on the applicability of the Traditional

Contract, or its terms, to BAV Plan claims, thereby making such claims eligible for the

---

[4]    Memorial Hermann's claim for damages, $17,000,000, is exactly the same under Count One and Count Two, further illustrating that both counts rely on the validity and applicability of the Traditional Contract.  (Dkt. No. 3-1 State Court Pet. ¶¶ 36, 45.)

[5]    There is "no perceptible difference" between federal and state law when determining the scope of an arbitration agreement.  *See Ford*, 141 F.3d at 250 n.7; *see also A&A Glob. Indus., Inc. v. Wolfe*, No. CIV.A.3:01CV1515-D, 2001 WL 1343628, at *3 (N.D. Tex. Oct. 29, 2001) (noting a determination of the scope of an arbitration provisions is similar under FAA and TGAA).

reimbursement rates agreed to in the Traditional Contract.  (*See* Dkt. No. 3-1 State Court Pet. ¶¶ 35-36, 42, 45.)  Thus, reference to and evidence relating to the Traditional Contract is essential for Memorial Hermann to maintain its claims.  The facts implicated by Count Three for declaratory relief are also "interwoven" with the Traditional Contract because that Count seeks a declaration that BCBSTX's claims determinations violate the parties' contract.  (*Id.* ¶ 48.) Resolution of this claim is not possible without reference to the Traditional Contract and therefore this claim is also subject to arbitration.  *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (confirming a Deceptive Trade Practices Act claim was subject to an arbitration agreement under the FAA, and adding that "Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same matter"); *see also Dickey's Barbecue Restaurants, Inc. v. Mathieu*, No. 3:12-CV-5119-G, 2013 WL 5268976, at *6 (N.D. Tex. Sept. 18, 2013) (holding that plaintiff's declaratory judgment cause of action was arbitrable).

## II.  Arbitration is Not Foreclosed by Other Legal Constraints

Memorial Hermann cannot show any legal constraints that would foreclose arbitration under these facts.  This is a simple two-party contract dispute with a valid arbitration provision, and there are no policy reasons or other statutes that would impact the arbitrability of the claims. *See Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995) (providing as an example of a legal constraint when "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue" (internal quotation marks and citation omitted)); *see also Fozard v. C.R. England, Inc.*, 3:16-CV-1334-B, 2017 WL 1036661, at *4 (N.D. Tex. March 17, 2017) ("The party resisting arbitration must demonstrate that Congress clearly intended to preclude the parties from waiving their judicial remedies or that another ground exists at law or equity (such as fraud or coercion) which permits the parties'

contract or agreement to be revoked." (internal quotation marks and citation omitted)). Arbitration is appropriate, and required, in these circumstances.

### III.     This Case Should Be Dismissed Under Rule 12(b)(3)

Fifth Circuit case law demonstrates that, when a valid arbitration agreement is applicable, dismissal under Rule 12(b)(3), rather than a stay of proceedings, is a proper remedy. *See, e.g.*, *Lim*, 404 F.3d at 902 (analyzing Fifth Circuit law, as well as other circuits, to find that it is proper to grant a Rule 12(b)(3) motion to dismiss in the event of a valid arbitration clause); *see also Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 37 (5th Cir. 1997) (affirming a district court's grant of a Rule 12(b)(3) motion to dismiss based on a forum selection clause).[6]  Because the claims in this case are subject to a valid arbitration agreement, the case should be dismissed.

<u>**CONCLUSION**</u>

Because this dispute is subject to a valid and applicable arbitration provision, this Court should compel arbitration pursuant to Section 4 of the FAA or Section 171.021(a) of the TGAA, and dismiss this litigation pursuant to Federal Rule of Civil Procedure 12(b)(3).  *See* 9 U.S.C. § 4; Tex. Civ. Prac. & Rem. Code § 171.021(a); Fed. R. Civ. P. 12(b)(3).  Alternatively, the Court should stay the litigation pending arbitration pursuant to Section 3 of the FAA or Section 171.025 of the TGAA.  *See* 9 U.S.C. § 3; Tex. Civ. Prac. & Rem. Code § 171.025.

---

[6]     There is also support for dismissing on the grounds of Federal Rule of Civil Procedure 12(b)(1).  *See, e.g.*, *Omni Pinnacle, LLC v. ECC Operating Servs., Inc.*, 255 F. App'x 24, 25–26 (5th Cir. 2007) (affirming district court's order dismissing claims under Rule 12(b)(1) and compelling arbitration).  To the extent the Court views Rule 12(b)(1) as the proper mechanism for dismissal pursuant to a motion to compel arbitration—and in the alternative— BCBSTX moves to dismiss on this ground as well.

DATED: September 11, 2017   Respectfully Submitted,

**KIRKLAND & ELLIS LLP**

By: _/s/ Brian P. Kavanaugh_

Brian P. Kavanaugh
Attorney-in-Charge
IL Bar No. 6270046
S.D. Tex. Bar No. IL6270046
Luke C. Ruse (_pro hac vice_ pending)
IL Bar No. 6296476
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: brian.kavanaugh@kirkland.com
   luke.ruse@kirkland.com

_and_

Rebekah Sills
S.D. Tex Bar admission pending
TX Bar No. 24091427
609 Main Street
Houston, TX 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
Email: rebekah.sills@kirkland.com

_Attorneys for Defendant, Health Care
Service Corporation, a Mutual Legal
Reserve Company, d/b/a Blue Cross and
Blue Shield of Texas_

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he contacted counsel for Plaintiff on September 8 and 11, 2017, in an effort to secure Plaintiff's agreement to arbitrate the claims asserted in the complaint in accordance with the terms of the parties' contract.  On September 11, 2017, counsel for Plaintiff responded that, "Memorial Hermann does not now agree to arbitrate its claims in this lawsuit under the Hospital Contract for Traditional Indemnity Business."

*/s/ Brian P. Kavanaugh*
Brian P. Kavanaugh

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's CM/ECF filing system on this 11th day of September, 2017.

*/s/ Brian P. Kavanaugh*
Brian P. Kavanaugh